# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Robyn B. Bennitt, | ) | Case No.: 05-03935-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | | |
| Rhonda Steadman Hood, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 05-00164 |
| | ) | |
| Robyn B. Bennitt, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion
Regarding Cross Motions for Summary Judgment**

The matters before the Court are:

1. The Motion for Summary Judgment for the Debtor, Robyn Bennitt filed on January 9, 2006 (Proceeding No. 31); and

2. The Creditor Hood's Motion for Summary Judgment filed on January 9, 2006 (Proceeding No. 33), as revised by Creditor Hood's Revised Motion for Summary Judgment filed on January 16, 2006 (Proceeding No. 35).

After notice, a hearing was held on February 23, 2006. Appearing were Mr. Henry Lagman, the attorney for the defendant; the plaintiff Rhonda Steadman Hood; and one of her attorneys Mr. James McFerrin. The matters were submitted on the record in this proceeding, briefs, stipulations and arguments of counsel, and a complete record of the proceedings from the state Circuit Civil Court of Jefferson County, Alabama, Civil Action No. CV 99-7128.

## I. Facts

The plaintiff and the defendant are both lawyers. The plaintiff referred several cases to the defendant. In return, the defendant promised to pay the plaintiff referral fees equal to one-third of the entire attorney fees collected in those cases. The defendant settled or otherwise obtained a recovery in all of the cases referred to her by

the plaintiff, and, in the process, collected $59,000 in attorney's fees. But, the defendant paid the plaintiff only $7,500 of the promised referral fees. In response, the plaintiff filed suit against the defendant in state court claiming breach of contract and fraud. At trial, the state court provided instructions to the jury regarding the elements and requirements of both of those types of actions under Alabama law. They were also specifically instructed that they could award punitive damages against the defendant on the plaintiff's fraud count only if they were to find by clear and convincing evidence that the defendant intentionally deceived the plaintiff.

The jury delivered a <u>general verdict</u> awarding the plaintiff undesignated damages in the amount of $90,000. The judgment entered by the trial court on the jury's verdict was affirmed by the Alabama Court of Civil Appeals without opinion.

The plaintiff contends that the debt represented by the state court judgment is nondischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. That section exempts debts resulting from, "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ..." from discharge. 11 U.S.C. § 523(a)(2)(A).

The parties filed cross motions for summary judgment. Each contends that all of the issues required for resolution of this adversary proceeding have already been considered and resolved by the state court. Consequently, each argues that application of the doctrine of collateral estoppel precludes relitigation of those same issues by this Court, and each believes she is therefore entitled to a judgment in her favor.[1]

## II. Legal Framework

### A. Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure, applicable to the pending matters by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The framework for determining whether there is a genuine issue of material fact that would preclude summary judgment is outlined in the Eleventh Circuit Court of Appeals decision in <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112 (11th Cir. 1993). The Court has followed that framework here.

---

[1] The Court recognizes that this disagreement between these parties has continued for some time and through extensive litigation. It is clear that both parties would like a definitive answer from this Court in this Memorandum Opinion. As discussed below, unfortunately the law prevents this Court from doing so.

2

## B. Collateral Estoppel

Collateral estoppel prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court. HSSM #7 Limited Partnership v. Bilzerian (In re Bilzerian), 100 F.3d 886, 892 (11th Cir. 1996), cert. denied, 523 U.S. 1093 (1998). And it is well-established that the doctrine of collateral estoppel applies in a proceeding to determine the dischargeability of a debt in bankruptcy. Id.

The decision rendered by the Supreme Court in Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985) requires bankruptcy courts, in dischargeability proceedings, to utilize a state's principles of collateral estoppel to determine the issue preclusive effect of a judgment rendered by a court of that state. "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 676 (11th Cir. 1993).

Under Alabama law, a prior judgment may be accorded collateral estoppel effect if: (1) the issue involved in the prior proceeding was identical to the issue involved in the present proceeding; (2) the issue was "actually litigated" in the prior proceeding; (3) the resolution of the issue was necessary to the prior judgment; and (4) the parties in the present proceeding are the same as those involved in the prior proceeding. Lott v. Toomey, 477 So.2d 316, 319 (Ala. 1985).

## C. Section 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code makes nondischargeable debts for money, property, services or credit obtained by a debtor by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To have a debt declared nondischargeable pursuant to 523(a)(2)(A), a creditor must prove:

1. The debtor made a false statement;

2. With the purpose and intention of deceiving the creditor;

3. The creditor relied on such false statement;

4. The creditor's reliance on the false statement was justifiably founded;

5. The creditor sustained damage as a result of the false statement.

3

Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996).[2]

The discussion below of "fraud" under Alabama law will demonstrate that the above standard for proving nondishchargeable fraud in a bankruptcy context is far stricter than proof of certain types of fraud under state law. Hence, it may be necessary, where fraud is alleged in a state court proceeding, for a bankruptcy court to determine whether that "fraud" rises to the level of nondischargeable fraud in the bankruptcy context.

### D. Alabama "fraud" law

What constitutes "fraud" in Alabama is the extensive subject of many statutes and judicial opinions. As the discussion below demonstrates, there are different types of fraud in Alabama law with varying degrees of intent.

Section 6-5-101 of the Code of Alabama provides, "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Code of Ala. 1975, § 6-5-101. Under section 6-5-101, a false representation, even if made by mistake or innocently, is actionable and entitles a plaintiff to compensatory damages. Hall Motor Co. v. Furman, 285 Ala. 499, 504, 234 So. 2d 37, 41 (1970). Fraudulent intent, or an intent to deceive, is not essential to a recovery under that section. Standard Oil Co. v. Johnson, 276 Ala. 578, 581, 165 So. 2d 361, 364 (1964). Neither is knowledge by the defendant of the falsity of his or her representations. First Nat'l Bank of Auburn v. Dowdell, 275 Ala. 622, 626, 157 So. 2d 221, 225 (1963); Barrett v. Hanks, 275 Ala. 383, 385, 155 So. 2d 339, 342 (1963).

The good faith of a party in making what proves to be a misrepresentation is immaterial as to the question of whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment. Smith v. Reynolds Metals Co., 497 So. 2d 93, 95 (Ala. 1986). Consequently, the mere assertion of that to be true which is not true, although believed to be true, when made to be relied on and which is relied on to the injury of a party misled thereby, may result in the imposition of liability for compensatory damages. Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149

---

[2] A false statement made without knowledge of its truth or falsity, in reckless disregard of the truth, is treated the same under 523(a)(2)(A) as a false statement made with knowledge of its falsity, and will suffice equally to render the resulting debt nondischargeable. "[R]eckless disregard for the truth or falsity of a statement constitutes a "false representation" under § 523(a)(2)(A) of the Bankruptcy Code." Birmingham Trust Nat'l Bank v. Case, 755 F.2d 1474, 1476 (11th Cir. 1985).

4

(1940); <u>Hartselle Real Estate & Ins. Co. v. Atkins</u>, 426 So. 2d 451, 453 (Ala. Civ. App. 1983).[3]

Intentional fraud, unlike innocent or mistaken fraud, may entitle the party deceived to receive punitive damages. That is the subject of sections 6-5-103 and 6-5-104 of the Code of Alabama.

Section 6-5-103 provides:

> Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

Code of Ala. 1975, § 6-5-103.

And section 6-5-104 provides:

> (a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.
>
> (b) A deceit within the meaning of this section is either:
>
>   (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
>
>   (2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

---

[3] Stated long ago by the Alabama Supreme Court:

One who is negotiating a trade must not recklessly or even innocently assert that as a fact which is untrue if such asserted fact be to any extent an inducement to the other party to enter into the contract. Honest belief in the truth of the statement of such fact, while it exculpates from moral fault, does not relieve from the legal liability to make it good. It is as much a fraud to affirm as true that which is untrue, though not known to be so, as it is to assert what is untrue and known to be so.

<u>Prestwood v. Carlton</u>, 162 Ala. 327, 50 So. 254, 257 (1909).

5

> (3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or
>
> (4) A promise made without any intention of performing it.

Code of Ala. 1975, § 6-5-104.

Read together, sections 6-5-103 and 6-5-104 define the mens rea and delineate the conduct necessary to a cause of action for a willful or intentional deception. To satisfy the mens rea requirement of the two statutes, a defendant must have: (1) purposely deceived the plaintiff with; (2) the intent to induce the plaintiff to act or alter his position. The conduct made actionable by the statutes includes: (1) intentional misrepresentations (a false statement made by someone who knows the statement to be false); (2) reckless misrepresentations (a false statement made recklessly by someone who may not know the statement to be false or someone who has no reasonable grounds for believing it to be true); (3) fraudulent concealment (non-disclosure by someone who has a duty to disclose); and (4) promissory fraud (a promise made by someone who has no intention of performing the promise).

Regardless of whether a representation was made willfully, recklessly, or mistakenly, in order to obtain a judgment based on fraud, the plaintiff must prove: (1) that the defendant made a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of his or her reliance upon the false representation. George v. Associated Doctors Health & Life Ins. Co., 675 So. 2d 860, 862 (Ala. 1996). Where promissory fraud is involved, the plaintiff must prove two additional elements: (1) that the false promise was made with a present intent to deceive and (2) that, at the time the false promise was made, the defendant intended not to perform. Valley Properties, Inc. v. Strahan, 565 So. 2d 571, 576 (Ala. 1990).

To be actionable, a misrepresentation must be one of a material fact. Lawson v. Cagle, 504 So. 2d 226, 227 (Ala. 1987). A fact is considered "material" if it is one that is likely to induce the party to whom the representation is made to take action. Havens v. Trawick, 564 So. 2d 917, 920 (Ala. 1990). But the misrepresentation need not have been the sole motivation for the plaintiff's entering into a contract. It is sufficient if the misrepresentation materially contributed to the plaintiff's making the contract and was of such a character that the plaintiff would not have consummated the contract, had he or she known the falsity of the statement. Bank of Red Bay v. King, 482 So. 2d 274, 282 (Ala. 1985).

The plaintiff must show that reliance upon the misrepresentation was reasonable under the circumstances. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Where a party has reason to doubt the truth of a representation or is informed

of the truth before he acts, he has no right to act thereon. M.J.M., Inc. v. Casualty Indem. Exch., 481 So. 2d 1136, 1141 (Ala. 1985). "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'volunti non fit injuria'." Torres v. State Farm Fire & Cas. Co., 438 So.2d 757, 759 (Ala. 1983) quoting Munroe v. Pritchett, 16 Ala. 785, 789 (1849).[4] If the circumstances surrounding the pronouncement of the representation would have aroused suspicion as to its validity in the mind of a reasonable person, the plaintiff cannot be said to have reasonably relied upon the misrepresentation. Holman v. Joe Steele Realty, Inc., 485 So.2d 1142, 1144 (Ala. 1986); Cook v. Brown, 393 So. 2d 1016, 1019 (Ala. Civ. App. 1981). But absent suspicious circumstances, or patent falsity, a plaintiff has no duty to affirmatively investigate and determine for himself whether or not the defendant is telling the truth. Shahan v. Brown, 167 Ala. 534, 52 So. 737 (1910).[5]

Punitive damages may not be awarded if liability is imposed based upon innocent or mistaken fraud. Therefore, while the good faith of a party in making a misrepresentation is immaterial to the determination of whether or not a fraud has been committed if another party has acted on the misrepresentation to his or her injury, it is material to the question of damages. Hall Motor Co. v. Furman, 285 Ala. 499, 503, 234 So. 2d 37, 40 (1970).

Punitive damages, by statute, may be awarded only, "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Code of Ala. 1975, § 6-11-20(a). "Fraud" is defined particularly in the statute as, "An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the

---

[4] Torres was overruled in Hickox v. Stover, 551 So.2d 259 (Ala. 1989), but was reinstated in Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997).

[5] As explained by the Alabama Supreme Court in that case:

[W]here statements are made of facts, especially where they concern matters which may be assumed to be within the knowledge of the party making them, the party to whom they are made has a right to rely upon them. In the absence of knowledge of his own which would arose suspicion, he is not bound to make inquiries or examine for himself. A party asserting facts cannot complain that the other took him at his word. "Positive representation of a fact cannot be counteracted by the implication that the party might have ascertained to the contrary; under such circumstances he need not institute an independent investigation." McDonald v. Pearson, 114 Ala. 638, 21 South. 534.

52 So. at 738.

intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." Code of Ala. 1975, § 6-11-20(b)(1).

Absent from the statutory list of types of actions that will support an award of punitive damages is an action for "breach of contract." "A claim for breach of contract will not support an award of punitive damages." Nolin v. Dismukes, 554 So.2d 1019, 1020 (Ala. 1989). And the statute was not designed to create a right to punitive damages which did not otherwise exist, or to expand the right to punitive damages to actions which would not have supported such a claim, prior to the statutes' enactment. "Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama." Code of Ala. 1975, § 6-11-20(a).

As the above demonstrates, a judgment can be awarded in state court for fraud where the fraud committed does not rise to the level of nondischargeability as required under the stricter bankruptcy law standard.

### III. Application of Law to Facts

Collateral estoppel would preclude only the litigation of issues in this proceeding if those same issues were actually and necessarily decided by the jury in the state court proceeding. "In order for the state court litigation to have collateral estoppel effect in a bankruptcy court, it must be clear that the factual determinations made by the trier of fact parallel the facts necessary to meet the federal standard of nondischargeability." Atchely v. Stover (In re Stover), 88 B.R. 479, 483 (Bankr. S.D. Ga. 1988). Hence, for collateral estoppel to preclude litigation of the nondischargeability of the debt owed by the defendant to the plaintiff pursuant to section 523(a)(2)(A), the state court jury would have had to have determined that the defendant made a false statement with the purpose and intention of deceiving the plaintiff; the plaintiff relied on such false statement; the plaintiff's reliance on the false statement was justifiably founded; and the plaintiff sustained damage as a result of the false statement.

The jury's verdict in this matter does not identify what issues the jury actually and necessarily decided in arriving at its verdict. The verdict simply rendered a general verdict against the defendant. The verdict reads:

> We, the jury, find in favor of the Plaintiff, Rhonda Steadman Hood, and against the Defendants, Bennitt & Bufford, LLC and Robyn G. Bufford; and assess the Plaintiff's damages in the amount as follows: $ Ninety Thousand and no/100 Dollars ($90,000).

Verdict, dated November 15, 2000, in Civil Action No. CV 99-7128(attached as part of Exhibit 1 to Creditor Hood's Revised Motion for Summary Judgment filed on January 16, 2006 (Proceeding No. 35)).

8

As is apparent, the verdict does not specify which of the plaintiff's two causes of action formed the basis of the jury's decision. If the jury had indicated, in its verdict, that any portion of the damages awarded were punitive, rather than compensatory, it could be inferred that its verdict was based on the plaintiff's fraud count. That inference would be supported by the legal reality that the jury must have concluded that the defendant was guilty of intentional fraud, since, under Alabama law, punitive damages cannot be awarded for breach of contract, and may only be awarded for intentional fraud.

In contrast, the verdict does not indicate whether the damages awarded are compensatory or punitive. And it does not specify what portion, if any, of the damages awarded were intended to be punitive, rather than compensatory. Thus, the verdict neither compels nor supports the conclusion that the jury based its decision on the plaintiff's fraud count. By the same token, the verdict does not compel or support the conclusion that the jury based its decision on the plaintiff's breach of contract count either. It simply offers no clue as to what issues the jury actually and necessarily decided in arriving at its decision to award damages in favor of the plaintiff, other than that the defendant failed to honor her promise to pay referral fees to the plaintiff. (The plaintiff makes a practical argument in this regard which is discussed below.)

As discussed above, "collateral estoppel assigns a preclusive effect only to those issues actually and necessarily decided in the prior lawsuit." S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1483 (11th Cir. 1987). And as some of the cases cited below demonstrate, "If the jury could have premised its verdict on one or more of several issues, then collateral estoppel does not act as a bar to future litigation of the issues." Id. Similarly, "because it was not possible to determine on which theory the jury rendered its verdict, the issue was not precluded from trial in a subsequent case." Board of County Sup'rs of Prince William County, Va. v. Scottish & York Ins. Services, Inc., 763 F.2d 176, 179 (4th Cir. 1985).

Based on the above, and the cases cited below, the Court finds that since this jury could have based its verdict on either of the plaintiff's two causes of action, and did not necessarily base its decision on the plaintiff's fraud claim, collateral estoppel does not bar the litigation in this proceeding of issues germane to the dischargeability of the debt owed by the defendant to the plaintiff by way of section 523(a)(2)(A).[6]

---

[6] See Fisher v. Space of Pensacola, Inc., 461 So.2d 790, 793 (Ala. 1984)(when it is not clear from a general verdict what issues were decided, collateral estoppel does not bar litigation of issues in subsequent proceeding); Ivey v. Wiggins, 271 Ala. 610, 126 So.2d 469, 473 (1961)(general verdict in favor of master in previous action for injuries allegedly caused by servant did not bar litigation based on same cause of action against servant in subsequent action where it was not shown that the judgment for the master was based solely on the issue of whether or not the servant had committed the wrongful act proximately causing plaintiff's injury); Moody v. Rambo, 727 So.2d 116, 118 (Ala. Civ. App. 1998)(general verdict for

9

defendant in negligence action brought by passenger in car that was rear-ended against driver of other car did not preclude driver of rear-ended car from seeking recovery from driver of other car for negligence, where basis of jury's verdict in passenger's case could not be discerned, and jury could have based its verdict on a determination that the passenger did not suffer a compensable injury, rather than a determination that the other driver did not act negligently or wantonly). Accord, S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gastaneta, 833 F.2d 1477, 1483 (11th Cir. 1987)(jury's general verdict of no breach of contract in prior suit by maritime lien claimant against vessel owner for breach of contract did not collaterally estop claimant from bringing in rem action against vessel to enforce maritime lien, where issues surrounding existence of maritime lien were not decided by the jury and it was unnecessary for the jury to resolve those issues in order to reach its verdict); Lary v. Ansari, 817 F.2d 1521, 1525 (11th Cir. 1987)(general verdict rendered by jury in action filed by one partner against the other alleging fraud and breach of contract between the two did not collaterally estop same plaintiff from bringing later action against corporate entities related to former defendant based on same fraudulent conduct alleged in previous case where determination of merits of the fraud claim was not critical or necessary to the jury's verdict in the previous case), cert. denied, 484 U.S. 964 (1987); Schneiderman v. Bogdanovich (In re Bogdanovich), 292 F.3d 104, 115 (2nd Cir. 2002)(jury's general verdict in state court fraud action awarding compensatory and punitive damages to plaintiff did not preclude litigation of 523(a)(2)(A) nondischargeability issues in bankruptcy court where it could not be discerned whether or not the verbal representations that the jury found to be fraudulent constituted statements "respecting the debtor's ... financial condition" which are actionable only pursuant to 523(a)(2)(B) and only if they were in writing); Dodge v. Cotter Corp., 203 F.3d 1190, 1198-1199 (10th Cir. 2000)(general verdict rendered by jury for plaintiffs in prior negligence action brought against uranium mill by residents of a community located near mill, in which jury found that mill was negligently operated, did not preclude, under doctrine of offensive collateral estoppel, relitigation of negligence issue in subsequent action against mill by different residents of same community where eleven specific acts of negligence were alleged in the first action, and it could not be discerned from the verdict which allegedly negligent activities formed the basis of the jury's decision, precluding a finding that the issues in both trials were identical), cert. denied sub nom., Chrysler v. Cotter Corp., 531 U.S. 825 (2000); Chew v. Gates, 27 F.3d 1432, 1437-1438 (9th Cir. 1994)(general jury verdict formed no basis for application of collateral estoppel where issues decided by jury could not be discerned and jury could have reached verdict based on issues other than those as to which collateral estoppel was sought), cert. denied sub nom., City of Los Angeles v. Chew, 513 U.S. 1148 (1995); McIntosh v. Weinberger, 810 F.2d 1411, 1429 (8th Cir. 1987)(general jury verdict for federal employees on constitutional tort claim alleging records destruction by official assigned to handle matters connected with discrimination investigation did not constitute collateral estoppel with respect to issue in discrimination action of whether promoting officials believed persons promoted were not better qualified than claimant employees where basis of jury's verdict could not be discerned and verdict could have been based on other grounds), vacated sub nom. on other grounds, Turner v. McIntosh, 487 U.S. 1212 (1988); Wheeler v. Laudani, 783 F.2d 610, 615-616 (6th Cir. 1986)(where, because jury's verdict in state court libel action was general, it was impossible to divine whether the verdict rested on a finding that the defendant acted knowingly or merely recklessly, defendant would not be barred under collateral estoppel principles from litigating the willful and malicious nature of the debt resulting from the verdict in a bankruptcy dischargeability proceeding); Board of County Sup'rs of Prince William County, Va. v. Scottish & York Ins. Services, Inc., 763 F.2d 176, 179 (4th Cir. 1985)(general jury

10

But the plaintiff disagrees and contends that this Court should infer from the amount of damages awarded that the jury in the state court based its verdict on a finding of intentional fraud. She claims that the evidence presented to the jury proved that she was entitled to only $12,167 in compensatory damages. Her reasoning is that, since the jury awarded an amount which exceeded her compensatory damages, it must have intended the overage to represent punitive damages, which, by law, can only be awarded based on a finding of intentional fraud. The plaintiff concludes that the jury's award of ostensibly punitive damages indicates that its verdict was necessarily based on a finding of intentional fraud. While this is an enticing argument, it is not one this Court is allowed to accept.

The plaintiff speculates as to what the jury reasoned. As the cases discussed below demonstrate, this Court cannot.

At issue in this case is an Alabama judgment based on a general verdict rendered by an Alabama jury. As such, it is governed by Alabama law. That law is embodied in the decision of the Alabama Supreme Court in City Realty, Inc. v. Continental Cas. Co. 623 So.2d 1039 (Ala. 1993) which, with respect to judgments

---

verdict against county in action brought by inmates alleging unconstitutional prison conditions in which the court instructed the jury that it could find liability on any or all of six separate theories, three of which included bodily injury, did not collaterally estop county's liability insurer from contesting coverage in subsequent action on the ground that it's policy only covered bodily and personal injury, where verdict could have been based on psychological injury, rather than bodily injury, and it was impossible to ascertain which one of those theories formed the basis of the jury's verdict); C.B. Marchant Co., Inc. v. Eastern Foods, Inc., 756 F.2d 317, 319 (4th Cir. 1985)(general verdict for supplier other than plaintiff in prior action against defendant for a debt that was owed to said supplier by third corporation did not establish by collateral estoppel that said third corporation had merged with the defendant in action later brought against defendant by plaintiff for debt owed by said third corporation since prior action was submitted to jury on alternate theories of de facto merger and breach of contract); Tucker v. Arthur Andersen & Co., 646 F.2d 721, 728-729 (2nd Cir. 1981)(in securities fraud suit brought by investors against accountants, accountants were not barred from seeking indemnification or contribution from corporation's chief executive officer, despite general jury verdict in favor of officer in previous suit, where jury could have based its verdict on the resolution of issues other than those to which officer sought to apply collateral estoppel). See also Mitchell v. Humana Hospital-Shoals, 942 F.2d 1581, 1584 (11th Cir. 1991)(under Alabama law, general order entered by state court denying unemployment benefits without giving reasons in support and without making findings of fact did not preclude, via collateral estoppel, subsequent retaliatory discharge claim, where order in prior proceeding could have been based on any number of grounds not germane to issues in subsequent proceeding); Amoco Prod. Co. v. White, 453 So.2d 358, 360 (Ala. 1984)(collateral estoppel did not bar litigation of issues where court's judgment in previous litigation did not reflect what issues were decided in arriving at the judgment and judgment could have been based on any number of grounds alleged in complaint filed in previous action).

11

rendered by Alabama courts, decried the type of inferential calculations suggested by the plaintiff as, "speculative and improper." Id. at 1045.[7]

In City Realty the prospective purchasers of a parcel of realty filed suit against a real estate brokerage firm and its manager alleging that the firm and its manager engaged in fraudulent conduct which prevented the purchasers from buying the property and resulted in the manager buying the property for herself. The jury returned a general verdict against the defendants and awarded the plaintiffs unspecified damages in the amount of $300,000. The trial court ordered remittitur of the damages to $255,000, based on its conclusion that the jury had awarded an excessive amount of punitive damages against the defendants, despite the fact that the verdict did not reflect that the jury had awarded any punitive damages, or that the jury had intended any portion of its award to represent punitive damages. The trial court's reasoning was, just as has been suggested by the plaintiff in this case, that since the evidence in the case indicated that the plaintiffs were only entitled to $5,000 in compensatory damages, the jury must have intended for the remainder of its award, $295,000, to constitute punitive damages. The Alabama Supreme Court reversed the remittitur on the grounds that the trial court should not engage in speculation regarding whether or not the jury intended to award punitive damages against the defendants, or how the jury may have intended its award to be apportioned between compensatory and punitive damages. The court also recognized that there was no basis, other than speculation, for concluding that the jury intended to award punitive damages against the defendants, or that the jury intended to apportion its damage award in the manner determined by the trial court.

The opinion reads in part:

> We now turn to the correctness of the damages awarded. Before we can address the arguments of the parties in this respect, however, we must examine a problem that also confronted the trial court. The jury's verdict was an undesignated award of $300,000. We do not know precisely the elements of that award.
>
> The jury's verdict was consistent with the form the trial court directed it to use. This form gave the jury only two options, to find an amount for the plaintiff or to find for the defendant. This form was defective in that it did not permit the jury to state a finding for both the plaintiff and the defendant, e.g., for the plaintiff as to compensatory damages, and for the defendant as to punitive damages, and it was defective as unresponsive to the issues at trial. For example, absent

---

[7] The federal court's decision in Board of County Sup'rs of Prince William County, Va. v. Scottish & York Ins. Services, Inc. agrees and includes this admonition, "We cannot distill special findings from a general verdict and to do so would intrude on the independent role of a jury as much as would a court's unilateral amendment of its verdict. 763 F.2d at 179.

12

some specific jury determination as to punitive damages, the matter of Cochran's culpability remains unresolved.

....

Because of the inherent flaws in the jury verdict form, which limited the jury's response, <u>there is no way for this Court to know what part of the award was for compensatory damages and what part, if any, was for punitive damages</u>.

Confronted with this problem, the trial court held that the jury could not have properly found compensatory damages in excess of $5,000. Then, based on that determination, it concluded that all other damages awarded by the jury must have been punitive damages. The trial court then found that $295,000 in punitive damages ($300,000 minus $5,000 compensatory damages) was excessive.

The Forbuses argue that it was "pure speculation" for the trial court "to designate what portion of the verdict was compensatory and what portion was punitive." We agree. Who can say with certainty that the jury did not award, for example, $300,000 in compensatory damages, meaning, under the trial court's reasoning, that a remittitur of $295,000 would have been in order. We do not suggest that this was the case. <u>To the contrary, we suggest that any such calculations are speculative and improper.</u> "[A] court's right to amend a jury verdict after discharge of the jury is limited to matters of form or clerical errors that are apparent from the record...." <u>Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams</u>, 530 So.2d 1371, 1377 (Ala.1988). A court's authority to amend a verdict after the jury has been discharged cannot extend to matters of substance that a jury must determine. <u>Id</u>.; <u>Alexiou v. Christu</u>, 285 Ala. 346, 232 So.2d 595 (1970).

Therefore, we hold that the trial court erred in its post-trial order. <u>The trial court improperly apportioned the jury award into punitive and compensatory damages</u>, and, based on that improper action, erred in ordering a remittitur of punitive damages. We reinstate the jury's verdict.

Having reinstated the jury's verdict, we must consider how we are to review it. How can we consider whether the amount of the jury award is excessive when we cannot know what that amount represents?

The Forbuses argue that the $300,000 verdict would be supported in any event, claiming that the award was supported by proof on the question of compensatory damages alone. If the jury verdict of $300,000 would have been supported by the evidence in any event, then our

13

inability to review it in terms of specific punitive damages or compensatory damages would be of no meaningful consequence. So too, it would be harmless error that the trial court failed to comply with Ala. Code 1975, § 6-11-1 (Supp.1988), which provides:

> "In any civil action based upon tort ..., except actions for wrongful death ..., the damages assessed by the factfinder shall be itemized as follows:
> "(1) Past damages
> "(2) Future damages
> "(3) Punitive damages"

Although we would hold that some $300,000 combinations of compensatory damages and punitive damages would be supported by the evidence in this case, we would hold, for example, that an award of $300,000 compensatory damages-which the jury might have intended as its award-would not be supported by the evidence. We reject the Forbuses' arguments to the contrary.

Obviously, in this situation a remand for further proceedings would seem the answer. However, to justify a remand, should there not have been an objection to the court's action regarding the verdict form? Not only was there no such objection in this case, it appears that the Forbuses, Cochran, and City Realty agreed to the form of the verdict. Perhaps for tactical reasons, these parties agreed with the trial court that it solicit a verdict either wholly in favor of the plaintiff, with a lump sum award, or wholly in favor of the defendants:

....

In <u>Green Tree Acceptance</u>, 565 So.2d at 38, we discussed the situation of unitemized verdicts and § 6-11-1. On appeal, the defendant in that case argued that the trial court's failure to use verdict forms itemizing compensatory and punitive damages, consistent with § 6-11-1, required a new trial. The defendant had not properly raised this issue in the trial court. We stated: "This Court will not put a trial court in error for failure to rule on a matter that, according to the record, was neither presented to nor decided by it." <u>Id</u>. at 46. We declined to remand the case on that ground for a new trial.

Here, no one objected to the verdict form and, in any event, we cannot properly remand this case for another jury to determine matters that were not determined in the first instance because of a situation the parties in the Forbus case agreed to. The economic and judicial resources of this state should not be so burdened.

14

In sum, we hold that the trial court erred in apportioning the verdict of $300,000 into compensatory and punitive damages. We do not disturb the $300,000 verdict. <u>We cannot say whether it is right or wrong; we do not know what it represents, and it could be either right or wrong, i.e., either appropriate or excessive.</u> We decline to remand this case for further determinations that would shed light on this issue, because the parties did not object to the undesignated verdict at trial.

623 So.2d at 1044-1046 (footnotes omitted)(emphasis added).

## IV. Conclusion

Under <u>City Realty, Inc.</u>, this Court is not at liberty to speculate whether, or to what extent, the jury intended for any part of its award to represent punitive damages. Moreover, even if this were not an Alabama judgment, it would constitute an improper intrusion on the independent role of the jury for this Court to attempt to distill specific findings from a general verdict, where, under the circumstances, that verdict could have been based on either of two alternative theories, one of which does not permit an award of punitive damages. Therefore this Court concludes that there are genuine issues of material fact and therefore both motions for summary judgment should be denied.

A separate order will be entered in conformity with this opinion.

Dated: August 28, 2006  /s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BC:sm
cc: Mr. Henry E. Lagman, attorney for the defendant
Mr. James McFerrin, attorney for the plaintiff
Ms. Virginia P. Meigs, attorney for the plaintiff
Trustee

15