# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Robyn B. Bennitt, | ) | Case No.: 05-03935-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Rhonda Steadman Hood, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AP No.: 05-00164-BGC |
| | ) | |
| Robyn B. Bennitt, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The matter before the Court is Creditor Hood's Motion and Brief in Support of Summary Judgment filed on March 31, 2010. Docket No. 135. After notice, a hearing was held on April 14, 2010. The plaintiff, Ms. Rhonda Steadman Hood; Ms. Virginia P. Meigs, the plaintiff's attorney; and Mr. Henry E. Lagman, the defendant's attorney, appeared.

The matter was submitted on the plaintiff's motion; the exhibits attached to that motion, including excerpts from the deposition of the defendant taken on July 2, 2008; the Affidavit filed by the defendant on February 16, 2010, Docket No. 129; the Defendant Robyn Bennitt's Counter Affidavit and Response to Creditor Rhonda Hood's Motion and Brief in Support of Summary Judgment filed on March 17, 2010, Docket No. 134; briefs in support of and in opposition to the motion; the record in this case; and arguments of counsel.

As explained below, the Court finds that there are no genuine issues of material fact, and the plaintiff is entitled to judgment as a matter of law.

### I. Litigation Background

The litigation between the parties began on December 13, 1999, when the plaintiff filed her original complaint in state court. The debtor filed the pending case on April 21, 2005. The plaintiff filed the pending adversary proceeding on July 14, 2005.

Loosely calculated, the parties have been litigating their differences for over ten years. During the time in this Court both parties have filed summary judgment motions, all of which this Court denied. See Hood v. Bennitt (In re Bennitt), 348 B.R. 820 (Bankr. N.D. Ala. 2006); Hood v. Bennitt (In re Bennitt), Case No. 05-03935, A.P. No. 05-00164, 2007 WL 951828, (Bankr. N.D. Ala. March 27, 2007); and Hood v. Bennitt (In re Bennitt), Case No. 05-03935, A.P. No. 05-00164, 2007 WL 1805085 (Bankr. N.D. Ala. June 21, 2007).

## II. Relevant Facts

The plaintiff and the defendant are both attorneys. The plaintiff holds a state court judgment against the defendant which the plaintiff obtained prepetition based on non-payment of referral fees.[1]

In this current phase of the parties' litigation the plaintiff seeks to have the defendant's discharge denied pursuant to Section 727(a)(3) of the Bankruptcy Code. 11 U.S.C. § 727(a)(3). That section provides:

> The court shall grant the debtor a discharge, unless – (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

Whether the debtor's discharge should be denied for this reason depends first on whether she did in fact keep records as required and second, if she did not, was she justified in not keeping those records. The discussion below of: her response to production of documents; records relating to her personal property; records relating to her accounts receivables; her bank account statements; her income tax returns; and specific facts relating to section 727(a)(3) proves for the most part that she did not keep the required records and did not justify why she did not keep them. The only evidence submitted to counter these facts are the defendant's two affidavits, which are also discussed below.

### A. Response to Production of Documents

To support her complaint, the plaintiff served the defendant with a notice to produce 27 categories of documents. Notice to Take Deposition and for Production of Documents, Exhibit B1 to Creditor Hood's Motion and Brief in Support of Summary Judgment, Docket No. 135-3 (hereafter "Exhibit B1"). In written response to that

---

[1] Additional information about the judgment is included in Hood v. Bennitt (In re Bennitt), 348 B.R. 820, 824 (Bankr. N.D. Ala. 2006).

2

request, the defendant answered "None" to 23 of those categories, thus signifying that she had no such documents. <u>Production by Robyn Bennitt in Response to Requests for Production of Documents</u>, <u>Exhibit B2</u> to <u>Creditor Hood's Motion and Brief in Support of Summary Judgment</u>, Docket No. 135-4 (hereafter "Exhibit B2").[2]

## B. Records Relating to "Personal" Property

The defendant did not list any real property on her petition. She listed personal property of: $3,300 in an account at First Commercial Bank; $400 worth of acrylic paintings; $14,261.10 in accounts receivable; $100 in clothing; $25 in costume jewelry; and a 1996 Lexus automobile, which she valued at $300 because it was inoperable and needed repair.

In regard to the defendant's personal property record keeping, the plaintiff has not produced any evidence that it is usual for someone not to maintain records with respect to personal attire or household decor or that any such record keeping is generally expected or done. The Court cannot find, under these circumstances, that the defendant had a responsibility to maintain such records. In regard to the defendant's cash in the bank, the Court could not verify this information because bank records were not produced. In regard to the automobile, the defendant indicated that it was titled in her husband, not her. She therefore did not have any responsibility to maintain records about it.[3]

---

[2] Many of the plaintiff's document requests are redundant. Moreover, many of the requests are over broad. The inquiry under section 727(a)(3) pertains to the debtor's financial condition and business transactions on the date bankruptcy was filed and for a reasonable period prior to that date. Documents which pertain to events that occurred after the debtor filed her petition are, absent proof to the contrary, not relevant to that inquiry. Also irrelevant are documents which pertain to events which occurred long before the bankruptcy filing. That being said, the Court has construed the plaintiff's document request to seek only those documents relevant to a 727(a)(3) inquiry, which are documents pertaining to events and circumstances as they existed when the debtor filed her bankruptcy case on April 21, 2005, and during a reasonable period preceding that date. Furthermore, the Court has disregarded redundant requests as well as those requests which pertain to items that, according to the debtor's deposition testimony, she did not own, was not owed, did not owe, or was not involved in. The debtor said she could not possibly have documents with respect to such things. Nevertheless, it is apparent that the debtor has, without justification, wholly failed to keep or preserve any recorded information, including books, documents, records, and papers, from which her financial condition or business transactions might be ascertained.

[3] The plaintiff also asked the defendant to produce all documents pertaining to the latter's assets. In that respect, the Court finds that numbers 8, 17, 18, 19, 22, and 27 of the plaintiff's request for production of documents (Exhibit B1) duplicate number 1 or are not relevant. Number 1 uses the term "assets," while the others ask for the same information using different phraseology and/or ask for documents pertaining to events that would have occurred either long before (e.g., "from June, 1996 forward," "since 1996," "in the last 12 years,") or after

3

### C. Records Relating to Accounts Receivables

The debtor's accounts receivables are the most substantial asset she listed in her petition. In her deposition, she frankly admitted that she neither maintains nor keeps any financial records or books of account of any sort, and, more to this point, has no recorded information from which anyone could determine the amount, aging, nature or any other details pertaining to the accounts receivable owed to her when she filed her bankruptcy petition.

### D. Bank Account Statements

The plaintiff asked the defendant to produce all of her personal bank statements, as well as those for her business account, from 1996 to present. That request was over broad. The defendant needed to produce only bank statements from the month she filed bankruptcy and for a reasonable number of months preceding. If she had, those statements would have revealed a great deal about the condition of the debtor's financial situation and business dealings when she filed bankruptcy. However, the question of how many pre-bankruptcy bank statements the defendant should have produced is academic because she did not produce any bank statements either for the month in which she filed her bankruptcy case, or for any month preceding the filing or, for that matter, any months immediately following that filing. The few that she did produce, namely for one month in 2007 and for the first six months of 2008, are of no use for ascertaining her financial condition or business dealings at or around the time when she filed bankruptcy almost 3 years before.

In her written response to the plaintiff's production request, the defendant offered an explanation of why she did not produce her bank statements. She explained that she could not produce bank statements for the months relevant to the plaintiff's 727(a)(3) inquiry because she did not have a personal bank account and that her practice was not to retain bank statements for her business account. She stated, "I don't keep statements and I do not have a personal bank account." Exhibit B2. Her explanation is contradicted in part because she retained bank statements for at least one month in 2007 and for the first six months of 2008. In any event, for the purpose of complying with the plaintiff's production request, the defendant could have easily obtained the relevant past statements from the bank. She did not.

### E. Income Tax Returns

The plaintiff asked the defendant to produce copies of her income tax returns for 1996 through 2007 or any other documents pertaining to income earned in those years. That request is over broad. It seeks returns for years after 2005 as well as for years

---

April 21, 2005. The relevant inquiry would be for documents relating to property of the bankruptcy estate.

4

which passed long before the defendant filed her bankruptcy petition. However, again this is academic because the defendant did not produce a tax return for any of the years in the request including the year in which she filed bankruptcy or the year preceding her bankruptcy filing. In her deposition, she explained that she did not file tax returns in either 2006 or 2007, and does not have copies of the returns that she filed in the years prior to that. She offered no explanation or justification for her failure to maintain copies of her tax returns, or to produce copies of her tax returns, even though she could have obtained those copies, or abstracts of the same, from the Internal Revenue Service.

### F. Specific Facts Relating to Section 727(a)(3)

Section 727(a)(3) does not require a debtor to produce any particular type or class of documents as a condition precedent to obtaining a discharge. Hence, the debtor's failure to produce particular types of documents such as tax returns or bank statements is not grounds for denying her discharge pursuant to 727(a)(3) per se. However, she is required to have maintained recorded information of some nature from which her financial condition or business dealings can be ascertained. In that regard, the plaintiff specifically asked the defendant to produce any documents relating to her "financial condition" or "financial affairs."

Specifically the plaintiff asked the defendant to produce:

15. Any documents relating to the financial condition of Robyn Bennitt or the law firm Bennitt Legal Service.

23. Copies of any other documents relating to the financial affairs, or condition of Bennitt Legal Services.

Exhibit B1.[4]

The defendant's written response to both requests was "None," thus signifying that she had not kept, preserved, or maintained any such documents. Exhibit B2. In her deposition, she confirmed that she does not keep business records of any sort or any records of her financial affairs. Her testimony includes:

Q. Any documents relating to the financial condition of Robyn Bennitt or the law firm Bennitt Legal Services?

A. To the extent that I know what that means, I don't have any documents like that.

---

[4] "Bennitt Legal Services" was the trade name under which the defendant was conducting her sole proprietorship when she filed her bankruptcy case.

5

Excerpts from Deposition Testimony of Robyn Bennitt taken on July 2, 2008, at 24-25, Exhibit B to Creditor Hood's Motion and Brief in Support of Summary Judgment, Docket No. 135-1 (hereafter "Deposition").

>    Q. Copies of any other documents relating to financial affairs or condition of Bennitt Legal Services, you have none?
>
>    A. No.

Id. at 34.

>    Q. And you stated earlier that you don't keep documentation, so is it your position today that you have absolutely no business records whatsoever that you can produce today?
>
>    A. Correct.

Id. at 115.

>    Q. Okay. Do you understand that as a debtor in bankruptcy that you have a duty to maintain records? Do you understand that?
>
>    A. My answer is I didn't save them.
>
>    Q. Ma'am, I didn't ask you that.
>
>    A. That's the answer I'm giving you.
>
>    Q. I'm asking you specifically, do you understand that you have a duty to maintain records during the pendency of your bankruptcy?
>
>    A. Of course I understand that.

Id. at 156-57.

>    Q. You said you had no documents that relate to your business practice.
>
>    A. And I don't.

Id. at 159.

>    Q. So you don't have a ledger or books of records or accounting system?
>
>    A. No.

Id. at 161.[5]

The testimony above demonstrates that the defendant frankly acknowledged that she had a duty under the Bankruptcy Code to maintain records of her business dealings and financial affairs.

The testimony below demonstrates that when the defendant was asked to explain why she had not maintained those records she responded, "I don't know," and "I just don't." Those answers indicate that she intentionally did not keep or maintain those records. The defendant's testimony includes:

> Q. I'm asking her a question, why she doesn't keep documentation on business records?
> .......
> A. I don't know.

Id. at 116.

> Q. So what I'm asking you under discharge on 727, why is it that you have not maintained records?
>
> A. Because I didn't.

Id. at 158.

> Q. And why is it that you have not maintained records for your legal practice?
>
> A. I just don't.

Id. at 159.

### G. The Defendant's Affidavits

The defendant filed her first Affidavit on February 16, 2010, Docket No. 129, and her second, Defendant Robyn Bennitt's Counter Affidavit and Response to Creditor Rhonda Hood's Motion and Brief in Support of Summary Judgment, on March 17, 2010, Docket No 134. In those she sought to demonstrate that there is a genuine issue of material fact with respect to whether she was justified in failing to maintain or produce records from which her financial condition and business dealings may be ascertained.

---

[5] The list of pages on the cover sheet to "Exhibit B" does not include page 161, however, that page is included in the exhibit.

The affidavits include three reasons why the defendant believes she was justified in not producing certain documents. Those are:

1. The only records she maintains consist of annotations in each of her client's files of the work that she performed for that client and the amount of money that client owes her. She argues those annotations are protected from disclosure by the attorney-client privilege;

2. She was justified in not keeping bank records because her bank kept them. In addition, because the bank had those records, the plaintiff had already obtained them by subpoena.

3. All of her documents and records that were created prior to August 27, 2003, were destroyed by a flood in her home caused by a broken air conditioner.

### III. Summary Judgment Standards

The standards for resolving summary judgment motions are outlined in the Eleventh Circuit Court of Appeals decision in Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11th Cir. 1993). This Court applied those standards in this matter.[6]

---

[6] The part pertinent to this proceeding is:

A. Introduction

Under Fed.R.Civ.P. 56(c), a moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The substantive law applicable to the case determines which facts are material. The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor.

In Adickes v. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court instructed the federal courts to employ a two-part framework of shifting burdens to determine whether, as regards a given material fact, there exists a genuine issue precluding summary judgment. The operation of this framework was modified significantly in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The current framework is set out below.

## IV. Conclusions of Law

### A. Burdens of Proof

#### 1. The Creditor's Burden

In a contest under section 727(a)(3), the creditor objecting to the discharge has the initial burden of proof. That burden is, "to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertain." <u>D.A.N. Joint Venture v. Cacioli (In re Cacioli)</u>, 463 F.3d 229, 235 (2nd Cir. 2006).[7]

### B. Movant's Initial Burden

The movant's initial burden consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.

#### 1. For Issues on Which Movant Would Bear Burden of Proof at Trial

As interpreted by this court sitting en banc, <u>Celotex</u> requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

---

[7] Neither fraud nor the debtor's intent is an element of the proof under section 727(a)(3). <u>Razzaboni v. Schifano (In re Schifano)</u>, 378 F.3d 60, 70 (1st Cir. 2004). In other words, "In order to deny discharge for failure to keep records the court need not find that the debtor intended to conceal his financial condition." <u>Meridian Bank v. Alten</u>, 958 F.2d 1226, 1234 (3rd Cir. 1992). "[I]ntent to conceal one's financial conditions is not a necessary element for the denial of discharge under § 727(a)(3). <u>Lansdowne v. Cox (In re Cox)</u>, 41 F.3d 1294, 1297 (9th Cir. 1994). "[C]reditors do not need to prove that the debtor intended to defraud them in order to demonstrate a § 727(a)(3) violation." <u>In re Juzwiak</u>, 89 F.3d 424, 43o (7th Cir. 1996).

## 2. The Debtor's Burden

If the objecting creditor satisfies its initial burden, the burden then shifts to the debtor.  Lansdowne v. Cox (In re Cox), 41 F.3d 1294 (9th Cir. 1994).[8]

The debtor's burden is one of justification.  The court in Meridian Bank v. Alten, 958 F.2d 1226 (3rd Cir. 1992) explained, "The Code now only requires that the creditor make an initial showing that the debtor's records are inadequate; thereafter the burden is on the debtor to prove justification." Id. at 1233 (Accord, Robertson v. Dennis (In re Dennis), 330 F.3d 696, 703 (5th Cir. 2003)).

## B. The Plaintiff Met Her Initial Burden

The plaintiff met her initial burden of showing that the defendant failed to keep and preserve any books or records from which the defendant's financial condition or business transactions might be ascertained.  The plaintiff met that burden through the defendant's deposition testimony and responses to requests for production of documents.  That evidence was clear.

The defendant has no recorded information, including books, documents, records, and papers, from which anyone could ascertain her financial condition or business transactions, at and around the time she filed her bankruptcy case and for a reasonable period before.  The defendant was specifically asked several times if she had any documents or records of any sort from which her financial condition or business transactions might be ascertained.  In her written response to the plaintiff's request for production of documents she replied "None," thus indicating that she has no such documents.  In her deposition she testified numerous times that she did not keep or preserve any such records as a matter of practice and choice.  She admitted that she has no tax returns, no information from which her tax returns were prepared, no bank statements (other than a few for one month in 2007 and six months in 2008, all more than likely irrelevant to the present inquiry), and that she has no recorded information about her accounts receivable.  She makes no pretext about it.  She simply has not kept or maintained any business or financial records of any sort except annotations in her individual client files describing what work she has performed and how much she is owed.

The evidence proffered by the plaintiff therefore proves that the defendant failed to keep and preserve any books or records from which her financial condition or

---

[8] "Once the objecting party shows that the debtor's records are absent or are inadequate, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." Id. at 1296.

business transactions might be ascertained. With respect to that material fact, there is no genuine issue. Consequently, the plaintiff satisfied her initial burden. Therefore the burden shifted to the defendant to present evidence that her failure to maintain adequate records was justified under the circumstances.

### C. The Defendant Did Not Meet Her Burden

The defendant failed to present evidence that her failure to maintain adequate records was justified under the circumstances or to demonstrate the existence of a genuine issue of material fact.

As stated above, the defendant filed her first Affidavit on February 16, 2010, Docket No. 129, and her second, Defendant Robyn Bennitt's Counter Affidavit and Response to Creditor Rhonda Hood's Motion and Brief in Support of Summary Judgment, on March 17, 2010, Docket No 134. Those affidavits offer three reasons why the debtor did not maintain adequate records and why she believes she was justified in not maintaining adequate records. Those reasons are: (1) a claim of attorney-client privilege; (2) records were available from a third party; and (3) the records she had were destroyed. As discussed below, the Court finds that evidence not to be sufficient to rebut the plaintiff's evidence.

#### 1. Attorney-client Privilege

The defendant's first reason for not producing records is that the only records she has of financial transactions are annotations in her individual client files describing the work she performed and what she is owed. She claims that she cannot produce those annotations because their production is forbidden by attorney-client privilege.

The defendant is incorrect. Information about fee arrangements, fees charged, and fees paid is not protected from disclosure by the attorney-client privilege.[9] But even

---

[9] O'Neal v. United States, 258 F.3d 1265, 1276 (11th Cir. 2001); In re Grand Jury Matter No. 91-01386, 969 F.2d 995, 998 (11th Cir. 1992); United States v. Leventhal, 961 F.2d 936, 940 (11th Cir. 1992); In re Grand Jury Proceedings 88-9 (MIA), 899 F.2d 1039, 1044 (11th Cir. 1990); United States v. Sims, 845 F.2d 1564, 1568 (11th Cir. 1988); In re Slaughter, 694 F.2d 1258, 1259-1260 (11th Cir. 1982); United States v. Davis, 636 F.2d 1028, 1044 (5th Cir. 1981); United States v. Ponder, 475 F.2d 37, 39 (5th Cir. 1973). Neither is the identity of an attorney's clients nor the general nature of the services rendered on behalf of those clients. United States v. Leventhal, 961 F.2d 936, 940 (11th Cir. 1992)(identity of client); In re Grand Jury Proceedings 88-9 (MIA), 899 F.2d 1039, 1043-1044 (11th Cir. 1990)(identity of client); Nguyen v. Excel Corp., 197 F.3d 200, 206 (5th Cir. 1999)(general nature of legal services provided); GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1273 (Fed. Cir. 2001)(general nature of legal services); United States v. Legal Services for New York City, 249 F.3d 1077, 1081-1082 (D.C. Cir. 2001)(general subject matters of clients' representations); In re Grand Jury Subpoena, 204 F.3d 516, 520 (4th Cir. 2000)(identity of client, amount of fee, identification of payment by case file name, and

11

if they were, or more accurately, if the defendant could justify her non-production of those annotations through the attorney-client privilege, it would not excuse her from complying with section 727(a)(3).

The Bankruptcy Code requires a debtor to keep and preserve written or recorded information from which his or her financial condition and business affairs may be discerned by creditors and the trustee as a condition of receiving a Chapter 7 discharge. A document, whether privileged or not, which the debtor cannot reveal to creditors or the bankruptcy trustee could not, by definition, constitute, "recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained...." 11 U.S.C. § 727(a)(3). If the document cannot be revealed to creditors or the bankruptcy trustee, neither can examine it for the purpose of ascertaining the debtor's financial condition or business transactions. Hence, while a claim of attorney-client privilege may justify a debtor's non-production of a particular document, it does not constitute justification for failure to keep and preserve other records that can be disclosed to creditors and the trustee from which they <u>can</u> ascertain the debtor's financial condition and business transactions.

The court in <u>In re Caneva</u>, 550 F.3d 755, 764 (9th Cir. 2008) explains:

> The terms of 11 U.S.C. § 727(a)(3) do not condition a debtor's discharge on the presentation of the documents that he did keep and preserve. Rather, the statute imposes an affirmative duty on the debtor to keep and preserve recorded information that will allow his creditors to ascertain his financial condition and business transactions.

<u>Id</u>. at 764. A debtor's election to keep and preserve only financial records which she cannot reveal to her creditors and trustee does not support a discharge in chapter 7.

In addition, whether the annotations made by the defendant in her client files contain sufficient information from which her financial condition and business transactions may be ascertained is unknown. Neither the Court, the trustee, nor the

---

general purpose of the work performed); <u>United States v. Amlani</u>, 169 F.3d 1189, 1194 (9th Cir. 1999)(same); <u>Clarke v. American Commerce National Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992)(same). Moreover, the defendant bears the burden of demonstrating the applicability of the privilege to each communication for which it asserted. "'The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential.'" <u>Bogle v. McClure</u>, 332 F.3d 1347, 1358 (11th Cir. 2003)(quoting <u>United States v. Schaltenbrand</u>, 930 F.2d 1554, 1562 (11th Cir.1991)). Her attempted blanket assertion of the privilege without raising it with respect to each entry in each document that she contends it pertains to is, as a matter of law, insufficient to demonstrate the applicability of the privilege to any given record. <u>In re Grand Jury Subpoena</u>, 831 F.2d 225, 226-227 (11th Cir. 1987).

12

defendant's creditors, including the plaintiff, are required to speculate on that question or simply to accept the defendant's representation on the point. It is a matter of proof which cannot be resolved absent production of the annotations. Therefore, there is presently no evidentiary basis for determining that those annotations, even if produced, would satisfy the requirements of section 727(a)(3).

Even if the defendant kept and preserved annotations in her client files which, in her opinion, she may not disclose to her creditors and the trustee because they are privileged, the statute cannot be satisfied. It was incumbent on her to produce other records from which her financial condition can be ascertained. She did not. This reason is therefore insufficient.

## 2. Records Were Available from a Third Party

The defendant's second reason for not producing records, specifically bank records, is that the records requested were maintained by the bank where she has her accounts and may be readily obtained by the trustee and creditors from her bank by subpoena. She even argues that she should be excused because the plaintiff obtained copies of those records by subpoena.

The statute does not require the defendant to keep and preserve banking records. It requires her to keep and preserve records that contain adequate information from which her financial condition and business transactions can be ascertained. Bank statements are one variety of financial records and may or may not, depending on the circumstances, satisfy the requirement of the statute. Ultimately, what types of records the defendant keeps and produces for creditors to use to ascertain her financial condition and business transactions is up to her, as long as they contain adequate information. It was her choice, and apparently she chose not to utilize her bank records to satisfy section 727(a)(3). Otherwise, as she indicates in her affidavit testimony, she could have readily obtained those records from the bank. But having made the choice not to use those records to satisfy section 727(a)(3), it was incumbent on her to produce records of another variety from which creditors can ascertain her financial condition. According to her affidavits, her deposition, and her response to the plaintiff's request for production of documents, the defendant did not keep or preserve any other financial records, and has not produced other records to satisfy her obligation under section 727(a)(3).

In addition, the argument that a debtor is not required to produce banking records because the trustee and creditors could obtain them directly from a bank has been routinely rejected by the courts that have considered the issue.[10] Therefore, even

---

[10] Structured Asset Services, L.L.C. v. Self (In re Self), 325 B.R. 224, 244 (Bankr. N.D. Ill. 2005)(fact that creditor had the ability to obtain documents via subpoena from various financial institutions did not alleviate debtor's burden to justify failure to keep adequate records);

13

if the trustee or creditors can obtain records from third parties, a debtor is not excused from maintaining records, preserving those records, or retrieving them from such a third party for the purpose of producing them when called upon in a 727(a)(3) proceeding.

In this case, the debtor did not retrieve those bank records herself, did not produce them in this proceeding, and did not produce other records from which her financial condition or business transactions may be ascertained.

And finally, in regard to the defendant's argument that the plaintiff already obtained those records pursuant to a subpoena, the debtor has not even tried to demonstrate that the bank records purportedly in the possession of the plaintiff sufficiently satisfy her burden by depicting her financial condition or business transactions during the time period leading up to her bankruptcy filing. Therefore, there is no evidence that those bank records in fact constitute, "information... from which [her] financial condition or business transactions might be ascertained...." 11 U.S.C. § 727(a)(3) (parenthetical added). The Court finds this reason is also insufficient.

### 3. The Records Were Destroyed

The debtor's third reason for not producing records from which her financial condition or business transactions might be ascertained is that, "The client files and records which were created before August 27, 2003 were destroyed by an intervening casualty circumstance...." Defendant Robyn Bennitt's Counter Affidavit and Response to Creditor Rhonda Hood's Motion and Brief in Support of Summary Judgment, at 3,

---

Ochs v. Nemes (In re Nemes), 323 B.R. 316, 329-330 (Bankr. E.D.N.Y. 2005)(debtor may not shift his duty of disclosure to the trustee by complaining that trustee had not examined several inches of records obtained by the United States Trustee pursuant to subpoena); Christy v. Kowalski (In re Kowalski), 316 B.R. 596, 605 (Bankr. E.D.N.Y. 2004)("The Debtor's assertion that his failure to maintain records should not result in a denial of discharge because the Plaintiffs could have obtained some of the requested documents from another source must be rejected as contrary to the law."); Bakst v. Isles (In re Isles), 297 B.R. 910, 915 (Bankr. S.D. Fla. 2003)("Debtors have an affirmative duty to provide documents that memorialize their financial history for a reasonable period past to present, and neither the trustee nor the creditors is required to ferret out the required records."); The Cadle Co. v. Jacobowitz (In re Jacobowitz), 296 B.R. 666, 670 (Bankr. S.D.N.Y. 2003)(same); PNC Bank v. Buzzelli (In re Buzzelli), 246 B.R. 75, 112 n.15 (Bankr. W.D. Pa. 2000)(debtor was not justified in failing to keep records by providing creditor with sources so that creditor could track down the documentation itself); Govaert v. Southern Nat'l Bank of North Carolina (In re Caserta), 182 B.R. 599, 611 (Bankr. S.D. Fla. 1995)("The trustee or creditors are not required to play detective and ferret out the documents of a debtor to reconstruct financial records."); Barnett Bank of South Florida v. Levine (In re Levine), 107 B.R. 781, 783 (Bankr. S.D. Fla. 1989)(debtors are under an affirmative duty to assist the trustee and the trustee is not required to go to third parties to reconstruct debtor's financial records).

Docket No 134. That circumstance is described as a flood in her home caused by a water leak from an air conditioner.

This reason explains only the failure to produce documents relating to events which occurred some twenty months before the bankruptcy filing. Those documents, even had they not been destroyed, would not have served to show what the debtor's financial condition was or what her business transactions were when she filed her bankruptcy case. And her reasons for failing to produce those documents cannot, in any event, justify her failure to produce records that she created, or that she was required to have maintained and preserved, after August 27, 2003. The Court finds this reason is also insufficient.

### D. The Debtor's Discharge Must Be Denied

The evidence before the Court compels the denial of the debtor's discharge pursuant to section 727(a)(3). That discharge must be denied because the debtor failed to keep or preserve records from which her financial conditions or business transactions might be ascertained and did not justify why she did not keep those records.

Procedurally, that denial comes pursuant to the plaintiff's motion for summary judgment. As discussed above, part of the standard for summary judgment in this Circuit is as follows:

> for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

The plaintiff met her initial burden of affirmatively showing that the defendant failed to keep and preserve any books or records from which her financial condition or business transactions might be ascertained. The plaintiff supported her summary judgment motion with credible evidence, including the defendant's deposition testimony and the defendant's written responses to the plaintiff's request for production of documents. As such, the plaintiff would be entitled to a judgment denying the defendant's discharge pursuant to section 727(a)(3) if that evidence were not controverted at trial. Based on that evidence, no reasonable fact finder could find for the defendant.

15

Case 05-00164-BGC    Doc 139    Filed 11/04/10    Entered 11/04/10 12:44:33    Desc Main
Document      Page 15 of 17

Therefore, the burden in regard to summary judgment shifted to the defendant to come forward with significant, probative evidence demonstrating the existence of a triable issue of fact. She attempted to do so through the averments in her affidavits which, according to her, if proved at trial, would constitute evidence that her failure to keep, preserve, and produce books and records was "justified," and, therefore, at this juncture, demonstrate that a genuine issue of material fact remains for resolution at trial. That attempt failed. The averments contained in the defendant's affidavits, even if true and accorded every inference favorable to the defendant, would not, if proved at trial, preclude the plaintiff from being entitled to a judgment denying the defendant's discharge pursuant to section 727(a)(3). Consequently, the plaintiff is entitled to summary judgment.

Because the plaintiff is entitled to summary judgment, the debtor's discharge must be denied pursuant to section 727(a)(3).

### E. The Plaintiff's Remaining Claims Are Moot

Because the Court has determined that the defendant's discharge must be denied in toto pursuant to 11 U.S.C. § 727(a)(3), the objection to discharge made by the plaintiff based on alternative grounds, as well as the nondischargeability determination requested by the plaintiff in her adversary complaint are moot. The plaintiff is free to pursue her claim against the defendant in such other forums as are appropriate.[11]

---

[11] "[A] determination of dischargeability of a debt is meaningful only in the context of a discharge. If a case is dismissed prior to entry of discharge or the discharge is denied or revoked, a judgment as to dischargeability of a debt becomes moot unless a subsequent bankruptcy is filed." First Omni Bank v. Thrall (In re Thrall), 196 B.R. 959, 968 (Bankr. D. Colo. 1996). "Denial of discharge is logically the first issue to address, because if Debtor is denied a general discharge, the issue of dischargeability of a particular debt is moot in these proceedings." McLaughlin v. Jones (In re Jones), 114 B.R. 917, 921 (Bankr. N.D. Ohio 1990). "The threshold issue is whether the Debtor should be denied a general discharge in bankruptcy as a denial of his discharge will render the dischargeability issues academic and moot." Barnett Bank of Pasco County v. Decker (In re Decker), 105 B.R. 79, 82 (Bankr. M.D. Fla. 1989). "[T]he denial of a discharge renders moot the declaratory relief feature of the nondischargeability judgment." Watson v. City Nat'l Bank (In re Watson), 78 B.R. 267, 271 (Bankr. C.D. Cal. 1987). "If a discharge is denied, a declaratory judgment of nondischargeability under section 523 is a waste of time, effort and expense for both the parties and the Court." Id. "[I]f discharge is denied, all dischargeability proceedings become moot." Chillicothe State Bank v. Carroll (In re Carroll), 70 B.R. 143, 146 (Bankr. W.D. Mo. 1986)(quoting 1A Collier on Bankruptcy § 17.28A, p. 1742.3 (14th Ed. 1976)).

Accord, Pilate v. Burrell (In re Burrell), 415 F.3d 994, 996-997 (9th Cir. 2005); Branch Banking & Trust Co. v. Chilton (In re Chilton), 2004 WL 3510108, *1 (M.D.N.C., April 15, 2004);

Based on the above, the plaintiff is entitled to judgment as a matter of law. A separate order will be entered contemporaneously with this Memorandum Opinion.

November 4, 2010 /s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BC:sm

---

State of Nebraska v. Strong (In re Strong), 293 B.R. 764, 769 (8th Cir. BAP 2003); Cepelak v. Sears (In re Sears), 246 B.R. 341, 352 (8th Cir. BAP 2000); Vaughn v. Aboukhater (In re Aboukhater), 165 B.R. 904, 912 (9th Cir. BAP 1994); Garland v. United States (In re Garland), 385 B.R. 280, 301 (Bankr. E.D. Okla. 2008); Kwi Angelvitch v. Chong Kil Yom (In re Chong Kil Yom), 2007 WL 2886357, *3 (Bankr. E.D. Va., Sept. 27, 2007); Ayers v. Babb (In re Babb), 358 B.R. 343, 360 n.5 (Bankr. E.D. Tenn. 2006); International Enterprises, Inc. v. Eddy (In re Eddy), 339 B.R. 8, 17 (Bankr. D. Mass. 2006); Morris v. Gaddy (In re Gaddy), 2004 WL 2044107, *4 (Bankr. D. Kan., April 12, 2004); Sterling Int'l, Inc. v. Thomas (In re Thomas), 2003 WL 21981707, *5, n.14 (Bankr. D. Idaho, July 17, 2003); Rasmussen v. Unruh (In re Unruh), 278 B.R. 796, 807 (Bankr. D. Minn. 2002); Levin v. DiLoreto (In re DiLoreto), 277 B.R. 607, 612 (Bankr. E.D. Pa. 2000); Allied Domecq Retailing USA v. Schultz (In re Schultz), 2000 WL 575505, *11 (Bankr. N.D. Ohio, April 21, 2000); Rothman v. Beeber (In re Beeber), 239 B.R. 13, 25 (Bankr. E.D.N.Y. 1999); Poos v. Dawdy (In re Dawdy), 1998 WL 34069398, *2 (Bankr. C.D. Ill., Oct. 15, 1998); Columbia Farms Distribution, Inc. v. Maltais (In re Maltais), 202 B.R. 807, 808 n.1 (Bankr. D. Mass. 1996); Kellogg-Citizens Nat'l Bank of Green Bay v. DeBruin (In re DeBruin), 144 B.R. 90, 94 n.2 (Bankr. E.D. Wis. 1992); Hubbell Steel Corp v. Cook (In re Cook), 126 B.R. 261, 270 (Bankr. E.D. Tex. 1991); The Everwed Co. v. Ayers (In re Ayers), 25 B.R. 762, 764 (Bankr. M.D. Tenn. 1982); Guardian Industrial Products, Inc. of Massachusetts v. Diodati (In re Diodati), 9 B.R. 804, 806 n.1 (Bankr. D. Mass. 1981).